**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DONALD FRANCISCO GARAY-MERCADO,

     Petitioner,

v.

                                              Case No. 2:26-cv-01119-MIS-KK

DORA CASTRO, Warden of the Otero
County Processing Center; TODD LYONS,
Acting Director, U.S. Immigration and
Customs Enforcement; MARKWAYNE
MULLIN, Secretary, U.S. Department of
Homeland Security; TODD BLANCHE,
Acting Attorney General of the United States;
and MARY DE ANDA-YBARRA, El Paso
Field Office Director, Immigration and
Customs Enforcement,

     Respondents.

## <u>ORDER DENYING EMERGENCY MOTION TO ENFORCE COURT'S PRIOR ORDER, FOR IMMEDIATE RELEASE, OR IN THE ALTERNATIVE FOR A NEW CONSTITUTIONALLY ADEQUATE BOND HEARING</u>

**THIS MATTER** is before the Court on Petitioner Donald Francisco Garay-Mercado's Emergency Motion to Enforce Court's Prior Order, for Immediate Release, or in the Alternative for a New Constitutionally Adequate Bond Hearing ("Motion"), ECF No. 14, filed May 28, 2026. The Government filed a Response on July 6, 2026 ("Response"). ECF No. 16. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

On April 10, 2026, Petitioner—an immigration detainee—filed a Petition for Writ of Habeas Corpus. ECF No. 1. On April 29, 2026, the Court issued an Order granting the Petition and ordering "an individualized and constitutionally adequate bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a)[.]" ECF No. 7 at 6.

On May 1, 2026, Petitioner appeared for a custody redetermination hearing before an Immigration Judge. See Order of the Immigration Judge ("First IJ Order"), ECF No. 11-1. The Immigration Judge denied Petitioner release on bond because "Flight Risk: has pending removal order that is final." Id. at 1.

On May 4, 2026, Petitioner filed his first Emergency Motion to Enforce Court Order, for Immediate Release, or in the Alternative, for a New Constitutionally Adequate Bond Hearing. ECF No. 10. On May 15, 2026, the Court granted that Motion because the Court could not determine from the First IJ Order whether Petitioner received a constitutionally adequate bond hearing. ECF No. 12 at 3. Consequently, the Court ordered Respondents to provide Petitioner with another bond hearing "at which the IJ is ordered to (1) consider the nine alien-centric factors from In Re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), [and] (2) explain the basis for his decision using alien-centric reasoning in sufficient detail to determine whether the hearing was constitutionally adequate, see id. . . . ." Id. at 3-4.

On May 20, 2026, Petitioner appeared for a second custody redetermination hearing. See Order of the Immigration Judge ("Second IJ Order"), ECF No. 13-1. The Immigration Judge denied Petitioner release on bond on the following grounds:

> The Respondent entered the US in July of 2021. The Respondent was ordered removed on September 15, 2023. More importantly, during the Respondent's Individual Merits hearing, the Immigration Judge found the Respondent was not credible due to omissions and inconsistencies in his testimony. The court finds the Respondent is a flight risk due to his speculative relief (Pending Removal Order), and the lack of sponsorship information relating to the sponsor's income verification.

Id. at 1.

On May 28, 2026, Petitioner filed the instant Motion challenging the basis for the denial of release on bond in the Second IJ Order, and arguing that the hearing was not constitutionally

2

adequate.  ECF No. 14 at 1-2.  On June 29, 2026, the Court ordered Respondents to respond to the

Motion.  ECF No. 15.  Apparently, Respondents construed the Court's Order as instructing them

to both respond to the Motion and provide Petitioner a third bond hearing.  See Resp. at 1.

On July 2, 2026, Petitioner appeared for a third custody redetermination hearing.  See Order

of the Immigration Judge ("Third IJ Order"), ECF No. 16-1.  The Immigration Judge denied bond

on the following grounds:

> The Court is complying with a District Court ordering and [sic] individualized bond
> hearing before an immigration judge. Generally, in order for an alien to secure bond,
> the alien must demonstrate to the satisfaction of the Court that such release would
> not pose a danger to property or persons and that he is likely to appear for future
> proceedings. In other words, he must demonstrate that he is not a danger to the
> community and that he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); see also Matter
> of Guerra, 24 I&N Dec. 37, 38 (BIA 2006); Matter of Adeniji, 22 I&N Dec. 1102,
> 1112–13 (BIA 1999). The court confirms that no motions to reopen have been filed
> and that the appeal is still pending before the Board of Immigration Appeals with
> briefs due by July 9, 2026.
>
> The District court asked this court to consider the factors set forth in Matter of
> Guerra. Immigration Judges may look to a number of factors in determining
> whether an alien merits release from bond, as well as the amount of bond that is
> appropriate. These factors may include any or all of the following: (1) whether the
> alien has a fixed address in the United States; (2) the alien's length of residence in
> the United States; (3) the alien's family ties in the United States, and whether they
> may entitle the alien to reside permanently in the United States in the future; (4) the
> alien's employment history; (5) the alien's record of appearance in court; (6) the
> alien's criminal record, including the extensiveness of criminal activity, the recency
> of such activity, and the seriousness of the offenses; (7) the alien's history of
> immigration violations; (8) any attempts by the alien to flee prosecution or
> otherwise escape from authorities; and (9) the alien's manner of entry to the United
> States. Matter of Saelee, 22 I&N Dec. 1258 (BIA 2000); Matter of Drysdale, supra,
> at 817; Matter of Andrade, 19 I&N Dec. 488 (BIA 1987).
>
> This court reviewed each of the factors and allowed the respondent to testify as to
> each one. The court finds the following for each factor listed above.
>
> 1) The respondent had a fixed address in the United States for almost 5 years.
> 2) The respondent has lived in the United States from July 5, 2021 to July 2, 2025
> almost 5 years.

3) The respondent has family ties in the United States to include a father, aunts and uncles. His aunt is a United Citizen who has not filed an immigration petition on his behalf and she is not an immediate relative. The respondent's daughter is a United States citizen who is 3 years old and could not petition for him until she is 21 years old.

4) The respondent has worked at his family's trucking business as a mechanic for four years. The respondent testified that his father and uncles who run the company do not have legal immigration status.

5) The alien has a record of appearing in immigration court consistently. However, DHS noted that the respondent had an arrest warrant issued against him for failing to appear to a traffic court hearing. The respondent testified that he failed to appear because he did not receive the hearing notice and that he has since paid the fine.

6) There is no evidence on the record that the respondent has any criminal history.

7) The respondent's history of immigration violations include his charges on the Notice to appear for violations of INA 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).

8) There is no evidence that the respondent has attempted to flee authorities.

9) The respondent's manner of entry into the United States was an illegal entry in disregard and in violation of the laws of the United States.

Based on the factors above the court finds the respondent to be a flight risk. In making its flight risk determination, the Court has considered all relevant factors regarding the Respondent, including local family ties, length of residence in the community, prior arrests, convictions, record of appearances at hearings, employment history, membership in community organizations, manner of entry and length of time in the United States, immoral acts or participation in subversive activities, property or business ties, fixed address, availability and likelihood of relief, and financial ability to post bond. See Matter of Andrade, 19 I&N Dec. 488, 489 (BIA 1987); see also Matter of Shaw, 17 I&N Dec. 177 (BIA 1979); Matter of Patel, 15 I&N Dec. 666 (BIA 1979). The respondent testified that he had documents for sponsorship by his uncle. The court acknowledged that even if his uncle was a viable sponsor and viewing the evidence in the light most favorable to the respondent, the court would find the respondent to be a flight risk. The Court may further consider the Respondent's character as one of the factors in determining the necessity for or the amount of the bond. See Matter of Andrade, 19 I&N Dec. at 490. The Court has extensive discretion when determining whether to release an alien on bond. Matter of D-J-, 23 I&N Dec. 572, 576 (A.G. 2003).

After weighing the relevant factors, the Court finds the Respondent does not pose a danger to the community. The respondent does not have any criminal history on the record. However, the Court finds the Respondent poses a significant flight risk. Respondent has a pending appeal on the denial of his I-589 application and he could be ordered removed if unsuccessful. Since the Respondent's appeal result is speculative, the Court has significant concerns that he will fail to comply with an order of removal if he is released from custody.

4

> The Court finds the Respondent poses a flight risk so substantial it cannot adequately be mitigated by the setting of an appropriate monetary bond and/or other nonmonetary release conditions. The Court further finds the Respondent is properly detained without bond, and the Court declines to set bond in his case. See Guerra, 24 I&N Dec. at 38.

Id. at 1-3.

On July 6, 2026, Respondents filed a Response to the Motion arguing that Petitioner has received three constitutionally adequate bond hearings.  ECF No. 16 at 6.

Although this Court has jurisdiction under 28 U.S.C. § 2241 to consider whether Petitioner's detention is constitutional, see Denmore v. Kim, 538 U.S. 510, 517 (2003), and has jurisdiction to enforce its own orders, see Mendez v. Dedos, No. 1:26-cv-00394-KG-JHR, 2026 WL 973077, at *2 (D.N.M. Apr. 10, 2026), the Court lacks jurisdiction to review an immigration judge's bond determination, see 8 U.S.C. § 1226(e); L.G. v. Choate, 744 F. Supp. 3d 1172, 1178 n.12 (D. Colo. 2024).

The majority of Petitioner's arguments attack the Immigration Judge's finding that Petitioner is a flight risk.  See Mot. at 2-3.  However, the Immigration Judge's flight-risk determination is not subject to judicial review.  8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); see also Mwangi v. Terry, 465 F. App'x 784, 786-87 (10th Cir. 2012); Acurero v. Castro, Case No. 2:26-cv-00565-MIS-JFR, 2026 WL 1180219, at *3 (D.N.M. Apr. 30, 2026); Singh v. Blanche, Case No. CIV-26-311-D, 2026 WL 915596, at *9 (W.D. Okla. Apr. 3, 2026), report and recommendation adopted, 2026 WL 1010480 (W.D. Okla. Apr. 14, 2026); Chen v. Dorneker, CASE NO. 21-3230-JWL, 2021 WL 5769354, at *2 (D. Kan. Dec. 6, 2021).  And the Court can determine from the Third IJ Order that

5

Petitioner received a constitutionally adequate bond hearing on July 2, 2026. See ECF No. 16-3 at 1-4.

Accordingly, it is **HEREBY ORDERED** that Petitioner's Emergency Motion to Enforce Court's Prior Order, for Immediate Release, or in the Alternative for a New Constitutionally Adequate Bond Hearing, ECF No. 14, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE